UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EMAD ALZUBAIDY

      Petitioner,                          Case No. 17-13436

v.                                          Honorable Thomas L. Ludington
                                            United States District Judge

ANTHONY STEWART,

      Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS***

      Petitioner, Emad Alzubaidy, presently incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Wayne County Circuit Court of first-degree criminal sexual conduct (CSC), Mich. Comp Laws § 750.520(b)(1)(c), assault with intent to commit criminal sexual conduct, Mich. Comp Laws § 750.520(g), kidnapping, Mich. Comp Laws § 750.349(1)(c), and third-degree criminal sexual conduct, Mich. Comp Laws § 750.520(d). Petitioner contends that his due process rights were violated because the police failed to preserve potentially exculpatory evidence, that there was insufficient evidence to convict, that he was denied the effective assistance of trial and appellate counsel, and that the trial court erred in refusing to conduct an evidentiary hearing on Petitioner's ineffective assistance of counsel claims. Respondent filed an answer to the petition, asserting that the claims lack merit and/or are procedurally defaulted.  The Court agrees that Petitioner's claims are without merit, therefore the petition will be denied.

# I.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a sexual assault that occurred in Dearborn in 2004. The complainant and her niece, both intoxicated, left a club that evening by car; the complainant's niece was driving. The car was stopped by the Dearborn police, who arrested the niece, impounded the car, and inexplicably took the complainant to a gasoline station, where they abandoned her. The complainant attempted to use a public telephone, but it was not operational, so she entered the station store. After several customers paid and left, one of the remaining men locked the doors behind the complainant. Another man, who the complainant identified as defendant, attempted to "console" the complainant by touching her shoulders, talking to her, and wiping her face with tissue paper.
>
> The complainant next recalled finding herself in an alley behind the station, with no memory of how she got there. Defendant attempted to take her clothes off and touch her; she "did not want him to do that," but her "willpower wasn't there" to push defendant away. She did not remember whether she physically indicated to defendant that she did not want to be touched, but she told him either "stop" or "no." Defendant continued trying to pull her pants and underwear down, and was "trying to look and see, [to] make sure nobody was coming." After the attempted rape, defendant and complainant walked to the front of the station and got into a waiting cab. The complainant testified that she did not want to get into the cab, but she did not tell the driver that she was under duress, and she did not feel free to leave defendant's presence. The cab drove them to a house a few blocks away and they went inside and to a back room. The complainant testified that she "kind of just gave up," thinking that defendant was going to do "whatever he [was] going to do, if he's going to kill me or whatever, the fight was just gone." Defendant removed both of their clothes, and "[p]ut his penis in [the complainant's] vagina," while she was "turning [her] head telling him to stop." Afterwards, she walked away and eventually found a cab that took her home.
>
> The complainant took a shower and slept until she was due to start her afternoon shift at a hospital in Detroit. She did not call the police. At the hospital, she told her supervisor about the assault, and went to the emergency room, where she was examined. She did not tell the examiner every detail she remembered about the assault, because she feared that her coworkers at the hospital would "be able to read the information that was in the report." She gave more details to Alan Levielle, the police officer who was called to the hospital to speak with her, but did not include the cab ride in that statement. In 2004, the complainant initially attempted to

determine defendant's identity, but "at some point[, she] just wanted to ... stop thinking about it."

In 2008, the original officer in charge of the case, Patricia Penman, a detective with the Dearborn Police Department, asked the Dearborn Police Department crime lab to send complainant's rape kit to the Michigan State Police crime lab for analysis. Amy Altesleben, a forensic scientist employed at the Michigan State Police Crime Lab, testified that an unidentified subject's DNA was discovered in a swab sample taken from the complainant's examination. Altesleben used the FBI's Combined DNA Index System to match the unknown DNA profile to defendant's profile. She requested and received a reference sample of defendant's DNA, and the reference sample matched the DNA profile on the swab. In 2010 or 2011, Sergeant Kenneth Muscat, a detective with the Dearborn Police Department, contacted the complainant, and she identified defendant from a photographic lineup. Muscat interviewed defendant, who denied knowing who the complainant was after viewing a photograph of her. Muscat told defendant that his "semen was found inside of [the complainant's] vagina," and defendant said "that [was] impossible[,] because[,] since he'd been divorced[,] he only masturbates for sexual relief or visits gay bars and has sex with men."

Relevant to the instant appeal, by the time of the renewed investigation, the physical portion of Penman's original case file had been lost and Muscat was unable to find it despite searching. In 2004, no standard or policy existed dictating how long the department would retain records of closed cases. Therefore, although the contents of the complainant's handwritten statements had been entered into the computer system, the statements themselves were missing. More notably, Penman had obtained from the manager of the gasoline station a surveillance video recording, which was also lost. By the time of trial, Penman no longer had any first-hand recollection of the tape, but she had recorded her observations at the time she watched it. She wrote that she

> observed [the complainant] in the store at [4:37 a.m.] on the 29th of August, 2004[,] on camera number four. She leaves the store at [4:49 a.m. At] approximately [4:38 a.m.] she asked to use the phone[,] and then at [4:55 a.m.,] what looked to be an orange cab pulled into the lot.

Penman said that she did not remember seeing the complainant use the phone. In her notes, she observed three people in the store besides the complainant, one of whom was a clerk. She did not write, or remember, whether she saw the complainant with someone else. Penman called Checker Cab and learned that the company does not have a license to pick up fares in Dearborn.

*People v. Alzubaidy*, No. 308409, 2014 WL 1510050, at * 1–2 (Mich. Ct. App. Apr. 15, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 497 Mich. 987, 861 N.W. 2d 44 (2015).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Alzubaidy,* No. 11-008512-01-FC (Wayne Cty. Cir. Ct., Apr. 11, 2016) (ECF No. 10-16). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Alzubaidy,* No. 334508 (Mich. Ct. App. Oct. 19, 2016); *lv. den.* 500 Mich. 1021, 896 N.W.2d 436 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court erred by denying the claim that defendant's constitutional rights to due process and a fair trial under the V, VI and XIV amendments of the United States constitution, [and the Michigan Constitution], were violated when the prosecutor lost video tape evidence that contradicted the complainant's version of events, was material to defendant's defense, and when the trial court allowed detectives to describe the contents of the video and subsequently allowed the prosecution to nullify their testimony by attacking the detective's credibility.

II. The trial court erred by denying the claim that defendant's constitutional rights to due process and a fair trial under the under the V, VI and XIV amendments of the United States constitution, [and the Michigan Constitution] were violated when the prosecutor failed to prove all the elements of the crime of kidnapping or criminal sexual conduct.

III. The trial court erred by denying the claim that defendant's constitutional rights to due process and a fair trial under the under the V, VI and XIV amendments of the United States constitution, [and the Michigan Constitution] were violated when defense counsel failed to request an asportation instruction, and failed to object to the lack of jury instructions on the asportation element of kidnapping.

IV. The trial court's applications of the preclusion doctrines of res judicata and collateral estoppel were in error when defendant claimed that his constitutional rights to due process, effective assistance of counsel, and a fair trial under the under the V, VI and XIV amendments of the United States constitution, [and the Michigan Constitution] were violated during the plea bargaining process, where Mr. Alzubaidy chose to reject an offer to plead guilty to one count with a sentence of 5-15 years after his attorney gave erroneous or inadequate advice on the consequences of going to trial on the five counts charged.

V. The trial court erred when it rejected Mr. Alzubaidy's argument that appellate counsel's ineffectiveness satisfied the cause and prejudice standards for failure to raise specific claims regarding violations of defendant's constitutional rights to due

-4-

process effective assistance of counsel, and a fair trial under the V, VI and XIV amendments of the United States constitution, [and the Michigan Constitution] where defendant claimed trial counsel (1) gave erroneous advice causing the rejection of plea offer; and (2) failed to explain to the court that defendant's belated acceptance of the plea was due to defendant's lack of understanding counsel and the court while using the interpreter.

VI. The trial court denied defendant due process of law and a fair appeal under the V, VI and XIV amendments of the United States constitution, [the Michigan Constitution] by denying [Alzubaidy] the opportunity to develop a reviewable record at a hearing pursuant to *People v Ginther* regarding defendant's trial and appellate counsel's conduct and reasons for their omissions.

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A]

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas Petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III.

### A.

Petitioner first contends that his due process rights were violated because the Dearborn Police failed to preserve the surveillance videotape from the gas station, which Petitioner argues would have contradicted the victim's version of events and thus could have been used to impeach her testimony.

The Michigan Court of Appeals rejected the claim:

As an initial matter, we find it difficult to perceive how the loss of the recording could have been in bad faith; the loss necessarily occurred prior to the complainant giving *any* testimony in court, and so it would have been impossible to know that the recording could have contradicted any testimony. Absent a showing a bad faith on the part of the police or prosecution, which defendant does not argue, the misplacement of potentially exculpatory evidence is not a violation of due process.

Furthermore, the inconsistencies were thoroughly brought to the jury's attention through Penman's notes and testimony. More significantly, nothing in the recording allegedly proves that defendant was not guilty. At most, the discrepancies merely confirm the complainant's testimony that she was intoxicated and could not remember certain details. Consequently, the recording was only potentially exculpatory and would not have been significantly more pertinent to the complainant's credibility than were Penman's notes and testimony. The weight of

> evidence, the credibility of witnesses, and what inferences can be fairly drawn from the evidence are to be decided by the jury.
>
> It is pure speculation to surmise that the jury would have acquitted defendant had it viewed the tape itself, rather than hearing Penman's summary of the tape's contents. The evidence introduced against defendant was otherwise nearly overwhelming: the forensic evidence that defendant's DNA was found in the complainant's vagina, coupled with defendant's denial of knowing the complainant and insistence that he could not possibly have had sex with her when interview by the police and then changing his defense to consent at trial. Because the missing tape was at most potentially exculpatory, and there is no evidence that the police or prosecution acted in bad faith, reversal was not appropriate.

*People v. Alzubaidy*, 2014 WL 1510050, at * 3 (emphasis original, internal citations omitted).

To prevail on his claim, Petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963).

The *Brady* rule extends to evidence that is not suppressed but is altered or destroyed. *See California v. Trombetta,* 467 U.S. 479, 489 (1984). For such evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 488–89.

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). When the state fails to preserve evidentiary material "'of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant,' a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means." *Monzo v.*

*Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003). "The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence." *Id.* "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, n.

Petitioner's claim fails because he has failed to show that the police acted in bad faith in failing to preserve the surveillance videotape for trial. *Malcum,* 276 F. Supp. 2d at 683. The mere fact that the police may have been negligent, or even grossly negligent, in destroying or losing the videotape is insufficient to show that they acted in bad faith. *Monzo,* 281 F. 3d at 580.

Petitioner is also not entitled to habeas relief because he failed to show that the Dearborn Police would have been aware of the allegedly exculpatory value of the surveillance videotape at the time that the tape was destroyed. *Malcum*, 276 F. Supp. 2d at 683. The surveillance tape was destroyed before Petitioner was charged with this crime let alone brought to trial, so there is no way the police could have known that this tape could be used to impeach the victim's trial testimony.

Finally, Petitioner's claim fails because he was able to bring out the inconsistencies between what occurred at the gas station and the victim's trial testimony through Detective Penman's notes and trial testimony. Petitioner's due process rights were not violated because the destruction of the surveillance videotape did not leave Petitioner without the ability or means to bring out the inconsistencies of the victim's testimony. *See United States v. Leedy*, 345 F. Supp.

3d 941, 958 (S.D. Ohio 2018). "Notably, the *Trombetta* standard does not require an exact duplicate of the evidence to be available to Defendant, but rather requires only 'comparable evidence.'" *Id.* Petitioner is not entitled to relief on his first claim.

**B.**

Petitioner next argues that there was insufficient evidence to convict him of first-degree criminal sexual conduct and kidnapping because the prosecutor failed to prove the element of asportation.

Under Michigan law, first-degree criminal sexual conduct is committed when there is an "intrusion into the genital or anal opening of another person" under one of the enumerated circumstances in the first-degree criminal sexual conduct statute. *See Farley v. Lafler,* 193 F. App'x 543, 548 (6th Cir. 2006). M.C.L. § 750.520b(1)(c) indicates that a defendant is guilty of criminal sexual conduct, first degree if sexual penetration occurs under circumstances involving the commission of another felony. To convict a defendant under this theory, the prosecutor must prove only two elements: (1) a sexual penetration (2) that occurs during the commission of another felony. *People v. Waltonen*, 728 N.W.2d 881, 890 (Mich. Ct. App. 2006). Under M.C.L. 750.349(1)(c), a person is guilty of kidnapping if "he ... knowingly restrains another person with the intent to ... engage in criminal sexual penetration or criminal sexual contact . . . with that person."

Petitioner claims that the evidence was insufficient to convict because the prosecutor failed to prove that he moved the victim against her will.

The Michigan Court of Appeals initially ruled that pursuant to the most recent enactment of Michigan's kidnapping law, "there is no asportation requirement formally mandated by the statute." *People v. Alzubaidy*, 2014 WL 1510050, at * 4.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "What is essential to establish an element [of a crime], like the question whether a given element is necessary, is a question of state law," of which federal habeas review is not available. *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Moreover, a federal court on habeas review must distinguish a sufficiency of evidence claim from state law claims which are disguised as *Jackson* claims. *Id.* at 860 (citing *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)). Thus, "when a habeas petition is predicated upon just one of several plausible interpretations of underlying state law, federal courts have declined to review state convictions on insufficiency-of-evidence grounds." *Jenkins v. Dailey*, 348 F. App'x 114, 119 (6th Cir. 2009). This Court must defer to the Michigan Court of Appeals' construction of the elements of state crimes. See *Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998).

The Michigan Court of Appeals concluded that asportation is not an element that is formally required to establish the elements of the crime of kidnapping. This Court cannot revisit that determination.

The Michigan Court of Appeals in the alternative concluded that assuming that the new kidnapping statute contains an element of asportation, the evidence was sufficient to support that element so as to sustain his convictions for kidnapping and first-degree criminal sexual conduct:

> The complainant testified that she did not call for a cab nor did she know who did. When she was asked how she knew to get into the cab, she said that defendant, who was standing "very close" to her, told her to get in, although she did not want to do so. She could not locate the house after the assault, saying only that the cab traveled "a few blocks" before letting her and defendant out, suggesting that defendant had ordered the cab and directed its driver to stop at the destination of his choice. The

jury could have concluded that defendant imposed his will on the obviously intoxicated complainant, based on her testimony that he told her to get into the cab, that he ordered her to "come with him" from the cab to the house, and that she did not feel free to leave or disobey defendant. Asportation need not be forcible; it must only be more than movement incidental to the underlying crime, in this case CSC. Defendant's movement of the complainant from the gas station to the cab, from the cab to house, and from the house to the street, is not incidental to CSC. Defendant chose to move her to a more private location to assault her; which is not a necessary feature of all CSC offenses, making separate punishment permissible.

*People v. Alzubaidy*, 2014 WL 1510050, at * 4 (internal citation omitted).

"In order to establish asportation as an element of the crime of kidnapping there must be some movement of the victim taken in furtherance of the kidnapping that is not merely incidental to the commission of another underlying lesser or coequal crime." *People v. Spanke*, 658 N.W.2d 504, 508 (2003) (Mich. Ct. App. citation omitted), *overruled on other grds by People v. Barrera*, 892 N.W.2d 789 (Mich. 2017). Although asportation is an element of forcible kidnapping, Michigan law does not require that the movement itself be forcible. "Rather, the only requirement for establishing asportation is that the movement not be incidental to committing an underlying offense." *Id.* If the movement [of the victim] adds a greater danger or threat [to the victim], that is a factor in considering whether the movement adequately constitutes the necessary legal asportation" to sustain a kidnapping conviction. *See People v. Adams*, 205 N.W.2d 415, 423 (Mich. 1973).

In the present case, the Michigan Court of Appeals reasonably concluded that there was sufficient evidence presented that Petitioner's movement of the victim from the gas station to a cab, from the cab to the house, and from the house to the street was not merely incidental to the commission of the first-degree criminal sexual conduct and hence was sufficient to establish asportation. Petitioner is not entitled to habeas relief because the Michigan Court of Appeals reasonably concluded that the evidence established the element of asportation, so as to support his

kidnapping conviction and the related first-degree criminal sexual conduct conviction. *Byrd v. Tessmer*, 82 F. App'x 147, 151 (6th Cir. 2003). Petitioner is not entitled to relief on his second claim.

### C.

Petitioner's remaining claims will be discussed together. Petitioner alleges that he was denied the effective assistance of trial counsel in his third and fourth claims. In his fifth claim, Petitioner argues he was denied the effective assistance of appellate counsel. In his sixth claim, Petitioner alleges that the trial court on post-conviction review erred in failing to conduct an evidentiary hearing on his ineffective assistance of counsel claims.

A defendant is required to satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The defendant must overcome a strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. *Id*. Stated differently, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id*. at 689. Second, the defendant must show that such performance prejudiced his or her defense. *Id*. To demonstrate prejudice, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*,

558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

In his third claim, Petitioner alleges that trial counsel was ineffective for failing to object to the judge's instruction to the jury on the crime of kidnapping, because the instruction omitted the element of asportation.

Petitioner is not entitled to relief on his claim for two reasons.

First, as mentioned when addressing Petitioner's sufficiency of evidence claim, asportation is not formally required by the kidnapping statute. The instruction as given adequately reflected Michigan law on the offense of kidnapping, hence, trial counsel was not ineffective for failing to object. *See Lint v. Prelesnik*, 542 F. App'x 472, 480–81 (6th Cir. 2013).

Secondly, the Michigan Court of Appeals reasonably rejected Petitioner's claim:

> As discussed above, any reasonable jury would have found the element of asportation satisfied based on the evidence in the record. In any event, defendant's theory of the case at trial was consent, even though the evidence was that in his initial conversation with the police he stated he did not know the victim and that any DNA evidence found in the victim could not possibly be from him. To be clear: Defendant's initial statement to the police was that he did not know and had never met the complainant and that the evidence of his DNA in the complainant's vagina must be erroneous and then altered his defense to consent at trial. The only question was whether the jury found the complainant credible and based on its verdicts, the jury believed her. Because asportation was never challenged, it would be implausible to believe that the jury would have changed its verdicts had the trial court given an instruction on asportation. Therefore, presuming—but, again, not deciding—that the omission of that instruction was plain error, it did not affect the outcome of the trial. Reversal is not warranted.

*People v. Alzubaidy*, 2014 WL 1510050, at * 5.

In the present case, Petitioner did not deny that the victim had been moved, only that she had consented to have sex with him. Because the element of asportation was essentially uncontroverted at trial, Petitioner was not prejudiced by counsel's failure to object to the omission

of this element from the jury instruction. *See Culp v. United States*, 266 F. Supp. 2d 606, 610 (E.D. Mich. 2003). Petitioner is not entitled to relief on his third claim.

Petitioner in his fourth claim alleges that trial counsel gave ineffective advice to Petitioner regarding a plea offer of 5-15 years in prison, causing Petitioner to reject the plea bargain.

Respondent argues that Petitioner's ineffective assistance of counsel claim is procedurally defaulted because Petitioner only raised this claim for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by M.Ct.R. 6.508(D)(3), for failing to raise the claim on his appeal of right.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal with one sentence unexplained orders. These orders did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise his claim on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in

this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the Petitioner's claim. *Id.*

The trial court's opinion and order denying the post-conviction motion was the last reasoned decision on Petitioner's claim. In one paragraph, the court denied the motion on preclusion grounds, under Michigan Court Rule 6.508(D)(2), on the erroneous belief that Petitioner had already raised the ineffective assistance of trial counsel claim on direct appeal. ECF No. 10-16 at PageID.1346-47. However, in the very next paragraph, the judge appears to have denied the motion for the exact opposite reason: that pursuant to Michigan Court Rule 6.508(D)(3), Petitioner had failed to raise his ineffective-assistance of trial counsel claim on direct appeal and also failed to show cause and prejudice to excuse this procedural default. ECF No. 10-16 at PageID.347. The judge then denied Petitioner's post-conviction motion in the concluding paragraph by again invoking M.C.R. 6.508(D)(3). ECF No. 10-16 at PageID.1348.

The Sixth Circuit has held that where a state court invoked Michigan Court Rule 6.508(D)(2) in denying a habeas petitioner's claim, but also cites Michigan Court Rule 6.508(D)(3) in the last paragraph, as the judge did here, the order is ambiguous, and thus does not provide an adequate and independent state ground to be considered a procedural default of the claim. *See Peoples v. Lafler*, 734 F.3d 503, 510–12 (6th Cir. 2013). The judge's order here in invoking both Michigan Court Rule 6.508(D)(2), followed by the invocation of Michigan Court Rule 6.508(D)(3), is too ambiguous to amount to a clear and express default of Petitioner's claim. This Court concludes that Petitioner's claim is not procedurally defaulted.

The Sixth Amendment right to counsel extends to the plea bargaining process. *See Lafler v. Cooper,* 566 U.S. 156, 163 (2012); *Missouri v. Frye,* 566 U.S. 134, 143–44 (2012). Thus, a criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." *Lafler,* 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he or she was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. *Id.* at 164. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.*

On the second day of trial, the parties indicated that a plea offer had been made to Petitioner. The prosecutor offered to allow Petitioner to plead guilty to first-degree criminal sexual conduct with a sentence agreement of 5 to 15 years. Defense counsel informed the judge that she had communicated the offer to Petitioner through an interpreter but that Petitioner said he did not want to accept the offer. ECF No. 10-8 at PageID.550–51. The judge swore in Petitioner. The judge asked Petitioner whether he understood the charges and potential prison sentences and also summarized the plea bargain. ECF No. 10-8 at PageID.551-54. Petitioner said: "I'm not going to take it because I'm not guilty." Petitioner acknowledged he discussed the plea offer with his attorney but told her, "I didn't think very good about it and I told her that that was too much." ECF No. 10-8 at PageID.554. Regarding the sentence agreement of 5 to 15 years in prison, Petitioner said "It's a crime for them to do that to me, five to fifteen years" and "that's just too much on me.

I'm fifty years old and then I'll be fifty-five and then I'll be deprived of my children." Petitioner confirmed that it was his decision to reject the plea agreement. ECF No. 10-8 at PageID.555-56.

Petitioner's claim that counsel gave him inadequate advise concerning the plea bargain is suspect, in light of the fact that he did not raise this claim on his appeal of right, but raised it only for the first time in his post-conviction motion for relief from judgment. *See e.g. Torres v. MacLaren*, 184 F. Supp. 3d 587, 594 (E.D. Mich. 2016), *rev'd on other grds sub nom. Torres v. Bauman*, 677 F. App'x 300 (6th Cir. 2017) (petitioner's affidavit that trial counsel was ineffective in advising him to reject plea offer was not credible where petitioner did not raise this claim on his direct appeal and did not explain why he did not attempt to raise the claim in his *pro per* application for leave to appeal to the Michigan Supreme Court after his appellate counsel failed to raise the claim before the Michigan Court of Appeals); *Paez-Ortiz v. United States*, 200 F. App'x 946, 948 (11th Cir. 2006) (Any deficiency in failure of criminal defendant's counsel to advise defendant to plead guilty did not prejudice defendant and did not amount to ineffective assistance, absent any evidence that plea offer was made to defendant or that defendant ever expressed desire or intent to plead guilty, where record indicated that defendant was aware of his option to plead guilty and of consequences of guilty plea at sentencing, and maintained his innocence throughout sentencing and on direct appeal); *United States v. Avalos Banderas*, 894 F. Supp. 2d 1169, 1176 (D. Neb. 2012), *aff'd sub nom. United States v. Banderas*, 858 F.3d 1147 (8th Cir. 2017) (no reason to believe that the defendant would have accepted a guilty plea, so as to support his ineffective assistance of counsel claim, where up until the filing of the 2255 motion to vacate sentence, the defendant "consistently maintained his innocence and directed his lawyers to proceed accordingly throughout the criminal case and on appeal").

In any event, Petitioner failed to show that he was prejudiced by any alleged deficiency by counsel in explaining the plea bargain to Petitioner in light of the fact that Petitioner indicated that he was not guilty and would not accept the plea bargain. Petitioner, in fact, at sentencing indicated that the victim had lied about the incident and continued to maintain his innocence. ECF No. 10-12 at PageID.053-54.

In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that defendant would have accepted the plea. *Lafler*, 566 U.S. at 164. In addition, a court, in determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action. *Id.* at 171.

Petitioner failed to show that he was prejudiced by counsel's failure give him better advice concerning the plea bargain because Petitioner has presented no credible evidence that he expressed any willingness before, during, or after trial to accept responsibility for his actions. In light of Petitioner's repeated protestations of innocence, as well as his express refusal to accept the plea offer when made, counsel was not ineffective with respect to her advice regarding the plea bargain. Petitioner is not entitled to relief on his fourth claim.

Petitioner in his fifth claim alleges that appellate counsel was ineffective for failing to raise his fourth claim on his appeal of right.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested

by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). A habeas court must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (per curiam) ("Given AEDPA, both Etherton's appellate counsel and the state habeas court were to be afforded the benefit of the doubt.").

Petitioner's fourth claim is meritless. "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Petitioner is not entitled to relief on his fifth claim.

Petitioner in his sixth claim alleges that the trial judge erred in failing to conduct an evidentiary hearing on the ineffective assistance of counsel claims that Petitioner raised in his post-conviction motion for relief from judgment.

Petitioner is not entitled to habeas relief on his sixth claim because it involves an alleged deficiency with his state post-conviction proceedings. This Court notes that "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007). Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F. 3d at 681. The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F. 2d 245, 246 (6th Cir.

1986) *(quoting Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F. 3d at 853 *(quoting Kirby*, 794 F. 2d at 247).

The denial of an evidentiary hearing by a state court on post-conviction review does not state a claim upon which habeas relief can be granted. *See e.g. Cornwell v. Bradshaw,* 559 F. 3d 398, 416 (6th Cir. 2009). Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel even on a direct appeal. *See Hayes v. Prelesnik,* 193 F. App'x 577, 585 (6th Cir. 2006). Because Petitioner sought an evidentiary hearing with respect to claims that he raised in his post-conviction motion, the failure by the state courts to grant him an evidentiary hearing on these claims would not entitle him to relief.

**IV.**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a

full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

## V.

Accordingly, it is **ORDERED** that Petitioner's petition for writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

Dated: July 10, 2020                              s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Emad Alzubaidy #**826963, LAKELAND CORRECTIONAL FACILITY, 141 FIRST STREET, COLDWATER, MI 49036 by first class U.S. mail on July 10, 2020.

s/Kelly Winslow
KELLY WINSLOW, Case Manager